Filed 1/17/14  In re M.J. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | E058322 |
| Plaintiff and Respondent, | (Super.Ct.No. J225282) |
| v. | OPINION |
| M.J., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Brian D. Saunders, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant M.J. (the minor) was sent to a foster placement facility in Michigan after the juvenile court found true allegations that he evaded police, resisted arrest and committed misdemeanor hit and run. Defendant argues the juvenile court erred when it admitted into evidence an incriminating statement that was obtained as a result of the police violating his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 to remain silent. As discussed below, we uphold the juvenile court's ruling that the minor made the statement voluntarily, rather than as the result of any interrogation.

### FACTS AND PROCEDURE

As of December 26, 2012, the minor had been a ward of the court for more than three years, had done two stints in juvenile hall, and was currently in foster care. That evening, Upland Police Officer Salvatore Lopiccolo saw a car run a stop sign. Lopiccolo, who was driving a marked police car, activated his overhead red light and pulled behind the car at a red-lighted intersection. Lopiccolo saw the driver make eye contact with him via the car's rear-view mirror. However, when the red light turned green, the car turned right and accelerated.

Lopiccolo activated his siren and the full bar of overhead lights and pursued the car for about two miles at a speed of 70 miles per hour in a zone with a speed limit of 40 miles per hour. The car at one point entered the opposing lanes of traffic and hit another vehicle, but did not stop. The car then returned to the original lanes, went through a residential gate and across a greenbelt. The car landed in some bushes, stopping just short of hitting a building. The car's driver, who was wearing dark clothing, got out and

2

ran away through a business complex. Lopiccolo lost sight of the driver. Ten to 15 minutes later, police received a call from a nearby business reporting that a person had been seen running and then jumping into a trash dumpster about 100 feet from where the car had come to rest.

At the dumpster, police ordered the person to come out and put up his hands, but the person refused. Police then sprayed pepper spray into the dumpster and "recovered" the minor from the dumpster. The minor complained of pain to his eyes and so was transported to the hospital for treatment. At the hospital, Lopiccolo handcuffed the minor to the gurney on which he was lying. While still at the hospital, and after being read his *Miranda* rights, the minor told Lopiccolo that he had hit a car and hit a bush, but had not hit the building near which his car came to a stop. After being medically cleared, the minor was transported to juvenile hall for booking.

On December 28, 2012, the People filed a subsequent petition under Welfare and Institutions Code section 602, charging the minor in count 1 with felony unlawfully driving or taking a vehicle (Veh. Code, § 10851); in count 2 with felony evading an officer (Veh. Code, § 2800.2, subd. (a); and in count 3 of leaving the scene of an accident (Veh. Code, § 20001, subd. (a)). The People dismissed the petition on January 16, 2012.

On January 22, 2013, the People refiled the petition and added count 4, felony possessing a stolen vehicle (Pen. Code, § 496d) and count 5, resisting arrest (Pen. Code, § 148, subd (a)(1)).

The trial took place on February 11, 2013.  The People dismissed counts 1 (vehicle theft) and 4 (possessing a stolen vehicle).  The juvenile court found true the felonious evasion charge (count 2) and the resisting arrest charge (count 5).  The court found not true the leaving the scene of an accident charge (count 3), but found true lesser included offense of misdemeanor hit and run (Veh. Code, § 20001, subd. (b)(2)).

On March 5, 2013, the juvenile court ordered the minor to a different out-of-home placement and his parents were ordered to participate in reunification services.  The minor was put in the custody of the probation officer and ordered to remain in juvenile hall pending placement in a "suitable foster care facility."  On March 22, 2013, the court ordered the minor to be placed in a facility in Michigan because no equivalent in-state facilities were available.  The minor filed his notice of appeal on March 19, 2013.

### DISCUSSION

The minor argues the juvenile court erred when it admitted into evidence the statement he made to Officer Lopiccolo while at the hospital that "he hit a car and hit a bush but he did not hit the building."  This is because, the minor asserts, although he made this statement after invoking his *Miranda* right to remain silent, the People did not carry their burden via Officer Lopiccolo's testimony to show that the minor was not being interrogated or questioned at the time.  The People counter that substantial evidence supports the juvenile court's finding that minor was not being interrogated at the time he confessed to being the person who drove and crashed the car.

4

*Officer Lopiccolo's testimony.*

At the jurisdiction hearing, Officer Lopiccolo described following the ambulance that transported the minor to the hospital for further treatment of his eyes. Lopiccolo testified that, once they were at the hospital, he handcuffed the minor to the gurney "to keep him from running." The prosecutor asked Officer Lopiccolo whether the minor made "any statement to you not in response [to] a question?" Lopiccolo responded "After I—after *Miranda*, he chose not to speak to me. He then told me after that he hit a car and hit a bush, but he did not hit the building." Lopiccolo clarified that "This was at the hospital. This was while he was waiting to be seen for X-rays or other treatment." At that point, defense counsel objected and asked "permission to voir dire."

> "Q. [DEFENSE COUNSEL]: After he – after you read him his *Miranda* rights – and you read them all, you have the right to remain silent, anything you say can and will be used against you in a court of law, and you went through – well, did you pull out your card?
>
> "A. [THE OFFICER]: What's that?
>
> "Q. [DEFENSE COUNSEL]: Did you pull out your standard issued card?
>
> "A. [THE OFFICER]: Yes. I read it off my card.
>
> "Q. [DEFENSE COUNSEL]: And he told you no?
>
> "A. [THE OFFICER]: Yes sir.
>
> "Q. [DEFENSE COUNSEL]: And, in fact, you asked him if he wanted to tell his side of the story and he told you no?
>
> "A. [THE OFFICER]: Yes, sir.
>
> "Q. [DEFENSE COUNSEL]: At that point did you stop all questioning.?
>
> "A. [THE OFFICER]: Yes, sir.

"Q. [DEFENSE COUNSEL]: And did you then leave the room?

"A. [THE OFFICER]: No, sir. I stayed with him inside the room.

"Q. [DEFENSE COUNSEL]: Did you from that point when he said no say any other words to him before he made any statements to you?

"A. [THE OFFICER]: Pertaining to the incident I don't believe so. No, sir.

"Q. [DEFENSE COUNSEL]: Pertaining to anything. Did you have a conversation with him about anything before he made some statements to you?

"A. [THE OFFICER]: I may – I can't remember. I may have asked him his mother's phone number so I could get ahold of her. But I asked from the timeline of when *Miranda* was to when I asked him the questions either on the booking app. or – and/or his mother's phone number, I can't quite remember.

"Q. [DEFENSE COUNSEL]: So you also asked him questions on the booking app. before he may have made the statements to you; correct?

"A. [The OFFICER]: To my – I really can't recall, sir."

At that point, defense counsel asked the court to exclude the minor's statement "because the officer can't recall exactly what was stated by the officer himself that could have led the minor to make a statement in response to whatever questions the officer can't remember that he was asked." The court denied the motion, reasoning that the officer was specific about the questions he asked the minor, even if he could not remember the exact timing of the questions. With the court's permission, defense counsel asked a few further questions.

"Q. [DEFENSE COUNSEL]: Are there any questions on your booking application that have to do with the reason for a minor's arrest or a defendant's arrest?

6

"A.  [THE OFFICER]:  No, sir.

"Q.  [DEFENSE COUNSEL]:  Your booking application questions are name, address –

"A.  [THE OFFICER]:  Name, address, father's name, father's – mother's name, that sort of thing.

"Q.  [DEFENSE COUNSEL]:  Whether they are a gang member?

"A.  [THE OFFICER]:  Yes.

"Q.  [DEFENSE COUNSEL]:  And he replied no to all those questions?

"A.  [THE OFFICER]:  Yes.  He said I think he has a tattoo.  That was one of the – on the box where the gang member section is it says tattoos, and I believe underneath it says gang member, yes or no.

"Q.  [DEFENSE COUNSEL]:  And approximately how long went by from the time that you had read the booking questions to him and asked him about his parents to the time when he made the statement?

"A.  [THE OFFICER]:  I can't remember the order.  It was right – it was within the – it was very close to it.  But I cannot exactly swear upon anything –

"Q.  [DEFENSE COUNSEL]:  Are we talking –

"A.  [THE OFFICER]:  – about a specific time.

"Q.  [DEFENSE COUNSEL]:  Are we talking about more than 10 minutes?

"A.  [THE OFFICER]:  Maybe 15 minutes.  10, 15 minutes.

"Q.  [DEFENSE COUNSEL]:  And it's your testimony that after he went over – you went over the booking questions or you can't quite recall, some questions, then all of a sudden he just said – he just went and made a statement to you?

"A.  [THE OFFICER]:  He eventually did tell me that, yes, that he hit the car and hit the bush, but he did not hit the building.

7

"Q. [DEFENSE COUNSEL]: Do you know if during this intervening period of time any other officers had talked with the minor?

"A. [THE OFFICER]: To my knowledge, no.

"Q. [DEFENSE COUNSEL]: And were you present the entire time from – or did you leave him at any time after making – asking him those questions, the booking questions, before he made the statement?

"A. [THE OFFICER]: Did I leave him? No. Once we got to the hospital, I stayed by his side until we went to juvenile hall."

The hearing resumed without further discussion of the court's ruling denying the motion to strike the minor's statements.

*Statement of the Law and Discussion*

"'The privilege against self-incrimination provided by the Fifth Amendment of the federal Constitution is protected in "inherently coercive" circumstances by the requirement that a suspect not be subjected to *custodial* interrogation unless he or she knowingly and intelligently has waived the right to remain silent, to the presence of an attorney, and, if indigent, to appointed counsel. [Citations.] "If a suspect indicates 'in any manner and at any stage of the process,' prior to or during questioning, that he or she wishes to consult with an attorney, the defendant may not be interrogated. [Citations.]" [Citation.]'" (*People v. Storm* (2002) 28 Cal.4th 1007, 1021 (*Storm*).)

"'A suspect, having invoked these rights, is not subject to further interrogation by the police until counsel has been made available to him or her, unless the suspect personally "initiates further communication, exchanges, or conversations" with the authorities. [Citations.] If a suspect invokes these rights and the police, *in the absence of any break in custody*, initiate a meeting or conversation during which counsel is not

8

present, the suspect's statements are presumed to have been made involuntarily and are inadmissible as substantive evidence at trial . . . .'" (*Storm, supra,* 28 Cal.4th at pp. 1021-1022.)

"[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its *functional equivalent.* That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 300-301, fns. omitted, italics added.)

In reviewing the trial court's ruling that the minor was not being interrogated when he told Officer Lopiccolo that he had hit a car and a bush, but not a wall, we accept the court's factual findings provided substantial evidence supports them. (*People v. Mayfield* (1997) 14 Cal.4th 668, 733 (*Mayfield*).) However we independently determine, based on the undisputed facts and those properly found by the trial court, whether defendant's challenged statement was illegally obtained. (*Ibid.*)

Applying these principles, we conclude that the minor was not being interrogated when he made these statements to Officer Lopiccolo. Interrogation refers to express questioning and any words or actions "on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode*

*Island v. Innis, supra,* 446 U.S. at p. 301, fn. omitted; *Mayfield, supra,* 14 Cal.4th at p. 732.)

Under the totality of the circumstances, Officer Lopiccolo's question to the minor about his mother's contact information, whether made from the booking form or not, was plainly not reasonably likely to elicit an incriminating response from defendant. Rather, it was a classic question incident to any arrest or custody, especially in the case of a minor. Lopiccolo simply asked for information on contacting the minor's mother, and this was not reasonably likely to elicit an incriminating response from defendant, or to get defendant to admit or deny that he was the person who drove and crashed the car.

The minor's counsel argues that the officer's statements about the circumstances that brought about the minor's admission made the record vague and ambiguous as to whether the admission was the product of interrogation. We disagree. Officer Lopiccolo clearly testified that he had merely asked the minor for his mother's contact information. The vagueness in this testimony was not about what question or questions brought about the defendant's admission, but rather how much time elapsed between the *Miranda* warning and the minor's statement, and whether the officer asked the minor for his mother's contact information as a practical matter or in order to fill out the booking form. In response to whether he said anything to the minor between the *Miranda* warning and the minor's statement, Officer Lopiccolo answered straightforwardly "Pertaining to the incident I don't believe so. No, sir."

10

The juvenile court did not err when it ruled that the minor's statement was made voluntarily rather than during an interrogation.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

HOLLENHORST
J.

McKINSTER
J.

11